BENJAMIN P. CHURCH *versus* JOHN ROWELL & *al.*

If a person has a home established in a town in this State, and goes therefrom for a specific purpose, intending to return when that purpose shall be accomplished, without making any other place his home for an indefinite period of time, his residence is not changed.

Otherwise, if he takes up his abode in another place, without any present intention to remove therefrom.

If he acquires a new residence, and leaves there to go to his old home, with the deliberate intention of not returning, and of abandoning his new residence, then goes to the town of his first residence, as to his former established home, and is there on the first day of May, having no intention to go to reside in any other particular place as a home, he is subject to taxation in that town.

But if he leaves in such case with the intention of returning, and not to abandon his new home, and that intention is retained by him on the first day of May, he is not a subject of taxation in that town.

The statement by the presiding Judge, during the progress of a trial, of a proposition, as a rule of law in relation to the admissibility of evidence, though erroneous, is no ground for exception, unless it appears that the party was prejudiced by it.

The declarations of a person, in connection with his departure from a place, are not admissible in his favor, unless accompanied by some act of starting or preparation to start.

ON EXCEPTIONS to an alleged ruling, to the instructions, and to the refusal to give certain requested instructions, by TENNEY, C. J., presiding at *Nisi Prius.*

TRESPASS against the defendants as assessors of the town of Hartland, for causing the defendant to be arrested for a tax assessed upon him by them, for the year 1853, he alleging that he was not a resident of the town of Hartland, or subject to taxation therein.

The alleged ruling, the instructions, and the evidence upon which the same were founded, are given in the opinion.

The counsel for the plaintiff requested the presiding Judge to instruct the jury, that the plaintiff, by residence in California, and the ownership of property there, became an inhabitant of California; and that, if he did not have the design to make Hartland his permanent place of residence on

the first day of May, 1853, he was not liable to taxation in that town.

The Judge declined giving these instructions any further than they were included in those given. The verdict being for the defendants, the plaintiff excepted.

*Hutchinson,* in support of the exceptions, cited 1 Gray, 441; 1 Met., 242, 250; 17 Pick., 128, 331; 23 Pick., 170; 3 Met., 199.

*Folsom,* for the defendants.

The opinion of the Court was drawn up by

Tenney, C. J.—The plaintiff was arrested and imprisoned, on account of the omission to pay a tax assessed upon him in the town of Hartland, for the municipal year 1853; and the action is against the assessors, upon the ground that he was not an inhabitant of Hartland on May 1, 1853.

There was no controversy, that the plaintiff lived with his father, in the town of Hartland, till he was seventeen years of age. Having bought his time, he left his father's house, and lived in several different towns, and was at Hartland very little afterwards, excepting that he was there at one time for about three months, attending school and living at his father's. He went to California, in the year 1850, and, while there, he and several others owned a house, in which they lived, and carried on mining operations. In March, or April, in the year 1853, he left California and came to Hartland, where he arrived on April 28, 1853. He staid there from three to five days, after which he went to Canaan; and, on the seventh day of May, 1853, he bought in Canaan a farm, stock, farming tools, and furniture, and afterwards took up his permanent abode in that town.

By the agreement of the parties, the only question was, whether the plaintiff was a subject of taxation in the town of Hartland, on May 1, 1853. Evidence was introduced, on which the plaintiff relied, that he had been an inhabitant of California, and that it continued to be his residence till he

took up his permanent home in Canaan. And, from evidence in the case, the defendant contended that he had abandoned California, and left there, with no intention to return.

The jury were instructed as follows :—First, if the plaintiff ever had a home established in the town of Hartland, and if he was in California, or other places, for a specific purpose, intending to return to Hartland, when that purpose should be accomplished, without making either of such places his home for an indefinite period of time, his former residence would not be lost. Otherwise, if he took up his abode in California, or other places, without any present intention to remove therefrom. Second, if he had acquired a home in California, and when he left there to come to Hartland, he departed with the deliberate intention of not returning there, but to abandon it, and he came to Hartland, as to his former established home, and was there on May 1, 1853, having no intention to go to reside in any other particular place as a home, he was subject to taxation in Hartland. If he had acquired a home in California, as before stated, and he left there with the intention of returning, and not to abandon it as a home, and such intention was retained by him on May 1, 1853, he was not a subject of taxation in Hartland, on that day.

Under these instructions, the jury must have found that the plaintiff had not lost his original residence in Hartland ; *or,* that having acquired a legal residence in California, he had abandoned it, and intended not to return thereto as a home, and did come to Hartland, as to his former established home, and was there on May 1, 1853, with no intention to make any other particular place his home.

All personal property, whether within or without the State, with certain exceptions, immaterial in this case, as the law was in 1853, were required to be assessed, in the town where the owner was an inhabitant on the first day of May, in each year. Statute of 1845, c. 159, § 9.

The word " inhabitant " may be construed to mean a resident in any place. R. S. of 1841, c. 1, § 3, clause 7. No

reason is perceived for giving a different meaning to the word "resident," when considering a case like the present, from its definition under the statutes, touching the settlement of paupers. The definition of the term "inhabitant," in the statute, is similar to the meaning given in the statute of Mass., of 1836, c. 2, § 6, clause 7, which has had a construction given to it in *Boston* v. *Thorndike*, 1 Met., 242. The first branch of the instructions is fully sustained by this case, in which it is said, in the opinion of the Court, — "It is a maxim that every man must have a domicil somewhere, and, also, that he can have but one." "If the plaintiff went abroad, not for the purpose of travelling, or for any other particular object, intending to return when that object was accomplished, but with the intention of remaining abroad for an indefinite length of time, or with the intention of not returning to Boston to live, in the event of his return to the United States, then he ceased to be an inhabitant of Boston." The second branch of the instructions is supported by the same case, and also the case of *Warren* v. *Thomaston*, 43 Maine, 406, in which it is said by the Court, — "To establish a residence within the meaning of the statute, there must be a personal presence, without any present intention to depart, and to break up a residence when once established, there must be a departure with the intention to abandon."

Objections to the ruling of the presiding Judge, at the trial, are relied upon in behalf of the plaintiff, that all declarations of the plaintiff, unless accompanied by some act of starting, or preparation to start, were inadmissible, in connection with his departure from California, in March or April, 1853 ; at which time he left "there to return to the States, or home, as he expressed it at several times ; witnesses testified, that he stated so, many times, up to the day of his departure, and one witness testified that, at the time of his departure, the plaintiff told him he was going to the States to recruit his health, and to return in the fall following." It does not appear that the testimony just quoted

was objected to or excluded. The ruling referred to, must have been the statement of a general principle, without any application to evidence then offered or given, and could not have been to the plaintiff's prejudice. The plaintiff's counsel contend that the principle stated is erroneous and inconsistent with adjudged cases, which are cited from Massachusetts. The ruling is not inconsistent with those cases, but the doctrine is in no respect impugned, that the declaration of a party, unaccompanied with any act, in his own favor, is inadmissible. Certain things done by the party, which things were admissible, were allowed to have character and explanation by what was said or written, as part of the *res gestæ*.

The general instructions to the jury embraced every thing contained in the instructions requested, so far as the plaintiff was entitled thereto.            *Exceptions overruled.*

*Judgment on the verdict.*

Rice, May, Goodenow and Davis, JJ., concurred.

Kent, J., dissenting.—I think the first instruction is erroneous, so far as it requires that the new home must be "for an *indefinite* period of time."

When it is claimed that a man, on a given day, was an inhabitant of, or dwelt and had his home in a certain town, although he in fact was not then personally living therein, it is necessary to prove that he had previously had an established home in that town, and that, although absent, he had not *abandoned* it as his home. It may still be his home, if it is shown that he has no other home and is absent temporarily intending to return, and *intending to retain his residence and citizenship*.

The point is, whether he had in fact abandoned the town, as his home, before the day in question. In determining this question, the fact that the party, when he left, intended to return at some future time, may be important. But after all, the question is, had he actually abandoned it as his home for the time in question?

. If he has, I do not see how he can be said to still dwell and have his home therein. It seems to me that when a man leaves a town intending to make a home in another town, and he does actually *go to such town with his family*, and there becomes a resident, he cannot be regarded as still living as an inhabitant of the town he left, because he may have intended, when he left, to return and resume a residence at some future definite period, in the place of his original residence. The question of intention is, did he intend to abandon actually his former home, or did he intend to retain a present and continuing home there, although absent?

If a resident of Bangor should be offered a good salary if he would go to Lewiston and there take charge of a factory for six years, and he accepts the proposition and moves his family and goods, takes a house and lives there as an inhabitant, is taxed, chosen a town officer, makes it his home exactly as Bangor was his home before, is he still a resident of Bangor, because, when he left it, he intended to return to Bangor, and again become a resident at the expiration of the six years? Can he be taxed every year in Bangor? Would he not acquire a settlement after five years of such residence in Lewiston?

Can a man properly be said to dwell and have his home in a town, on a given day, when in fact he does not live there, but has abandoned his residence therein *expressly for and during that time*, and actually lives with his family, as his home, in another town, because he intends at some remote and fixed period to abandon his then present home and return to the former town and begin a new residence? Would it not complicate the matter, if, when he abandoned his second residence to return to the first, he intended to return to the second at the end of a year? A man living to-day in Bangor intends to remove to Brewer on the first of June. Is he not to-day a resident of Bangor?

It seems to me that the question is, not whether he has abandoned for a definite or indefinite period of time, but

whether he has actually abandoned it as his home for the time in question. The determination of this question must depend upon the result to be drawn from the whole evidence on the point. If the party intended to remove for a temporary purpose only, and intended to retain his home and residence in the town during such absence, then he would not lose his residence. But if he intended to make another town his home, and intended to abandon the former town as his home, for a longer or shorter time, for a fixed or for an uncertain time, and actually removes to such new town, and makes it his home, he would lose his former residence during that time.

A man cannot have two homes at the same time, but he may abandon one home before he actually acquires another. This was settled in *Exeter* v. *Brighton*, 15 Maine, 58. The question is—has he actually abandoned his first home? The test is not whether he intends at some future time to become again a citizen, but whether he intends to abandon then and for the time in question, that town as his home, and actually carries that intention into effect. If such is his intention, how can the fact of *definite* or *indefinite* time have any controlling influence? According to the ruling in this case, if a man, going to California, takes his family with him and avows that he intends to abandon the town in which he then resides, and to make his home in California as long as he can find gold; and he does go and make such home, he would lose his former residence, although he intended, and so declared when he left, that he was going for a specific purpose, and intended to return to the town he was leaving, at some indefinite time. But, if he declared the same intention, and does all, as above stated, yet, if he said he intended to dig gold *for three years*, and then to return, he would still be a resident in the eye of the law, notwithstanding the facts of actual residence and a home in California, and his intention to make it his home for three years. I confess I cannot see the soundness of this distinction.

I simply maintain this proposition,—that a man may be said to abandon his residence in a town, although he may intend to come back and commence a new residence at some future fixed time, if all the facts in the case show that he intended to abandon and to fix his home in another town, and that he does so for the period limited. The question is, was his home, during that time, where he intended it to be and where in fact it was, or did it continue, by construction, in the town he had left? Is he a resident of the town where he is with his family, or is he a resident in a town where he is not, because he intends, at some future day, to return and again become a citizen of that town?

I do not see why a man may not as well abandon, for a fixed and limited time, as for an indefinite time. The main question is, had he actually and intentionally abandoned the town as his residence, on the day or time in question. This must be settled on the whole evidence, as to his intentions and acts. I am at a loss to perceive, why the law should insist that a man is a resident of the town on a given day, when he is neither there in person nor has any family or house there, and does not wish or "intend" to be there, but has deliberately removed therefrom, with an intention to live as a citizen of another town, where he does live with his family, exactly as he lived in the former town, simply because he cherishes the intention of doing, at some future day, in the new town, what he did in the old, abandon it as his place of residence.

I do not think that the question is to be decided by the character of the new home, whether for a temporary or specific purpose or not. It can make no difference what the motive or purpose is, except so far as they show the intention to give up or retain a residence. A man may have a home in a town into which he comes for a defined and specific purpose, or for a limited time, as well as one who comes with no particular object and for no particular time. Was it his home for the time? If so, he could have no other home during the same time.

The character of his new residence is not the question in issue, except as evidence. The point on which the case turns is, did the party, when he left his former residence, intend to abandon it as his home, and did he so abandon it, intending that it should no longer be his home, until he resumed by a new act a new residence therein, or did he intend to retain his residence, although, in fact, absent personally?

In determining this question, the fact and character of his residence in the new town will, of course, have a bearing more or less important. But, if it should be clearly proved that a man had actually and absolutely "abandoned" his home, the effect of that abandonment would not be nullified, if it should be shown that he had been ever since a wanderer, without any fixed home. A man cannot have two homes at the same time, but he may, in fact, have no home, on a given day. An old home does not, like an old legal settlement, necessarily continue until a new one is acquired.